# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RAUL NIETO,

        Plaintiff,

vs.                                             No. CIV 08-0465 JB/WPL

UNIVERSITY OF NEW MEXICO,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Vacate or Set Aside Judgment, filed June 1, 2010 (Doc. 20)("Motion"). The Court held a hearing on September 28, 2010. The primary issue is whether the Court should vacate the judgment that the state court entered before the case was removed. Because the Court has already determined, now that it has declined to remand the case, that it must treat the state court judgment as if the federal court had entered it, and because the Court concludes that Nieto has not shown he was faultless under extraordinary circumstances in delaying bringing his Motion pursuant to rule 60(b)(6) of the Federal Rules of Civil Procedure, the Court denies the motion.

## FACTUAL BACKGROUND

Defendant University of New Mexico ("UNM") employed Plaintiff Raul Nieto as a Certified II Tech at the UNM Hospital from October 12, 1998, until October 17, 2005. Nieto asked the UNM Hospital facilities supervisor whether he could buy a set of five filing cabinets that were "located outside of his workplace by parking lot five." Defendant's Response to Plaintiff's Motion to Vacate or Set Aside Judgment at 1, filed June 18, 2010 (Doc. 21)("Response"). Nieto alleges that the supervisor told him to get the cabinets, because the supervisor had been trying to get his employees

to get rid of the office equipment.  See Response at 2-3.

After taking the cabinets, Nieto was informed that the adjacent Indian Health Services ("IHS") facility owned the cabinets, and he was instructed to return the cabinets.  See Response at 3.  Nieto alleges that he returned the cabinets to the IHS facility, but UNM alleges video surveillance cameras reveal they were not the same cabinets.  See Response at 3.  On September 30, 2005, Nieto was placed on paid administrative leave and subsequently given a notice of proposed termination on October 5, 2005.  See Response at 3.  Nieto was terminated on October 17, 2005, for failing to return the filing cabinets as instructed.

## PROCEDURAL BACKGROUND

The present lawsuit arises out of an employment discrimination and wrongful termination claim.  On January 12, 2007, the Equal Employment Opportunity Commission ("EEOC") issued a Dismissal and Notice of Rights.  See Doc. 1-1.  On April 13, 2008, upon receipt of the Notice of Right to Sue that the EEOC issued, Nieto timely appealed the EEOC's dismissal, filing a Notice of Appeal and Complaint for Damages and a Jury Demand in the Second Judicial District Court, County of Bernalillo, State of New Mexico.  See Doc. 1-1.  Nieto brought claims of national origin and race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17, and breach of contract.  In addition to filing his Complaint and a jury demand, Nieto filed an arbitration certificate on April 13, 2007.  The statute of limitations expired for Neito's claims in April 2007.  See Reply to Plaintiff's Motion for Reconsideration or Motion to Vacate or Set Aside the Judgment at 2, filed July 23, 2010 (Doc. 22)("Reply").[1]

_____

[1] Nieto notes that, under New Mexico procedure, reinstating a case allows the court to reactivate the case at the same point in the proceedings where it was dismissed and suspends the applicable statute of limitations.  See Bankers Trust Co. of California N.S. v.Baca, 141 N.M. 127,

On July 20, 2007, UNM acknowledged notice of the Complaint through written correspondence.  See Letter from John Stiff to Gilbert Vigil (dated July 20, 2007), filed May 12, 2008 (Doc. 1-2).  UNM's counsel notified Nieto's counsel that his firm had "been retained by the New Mexico Risk Management Division to represent the interests of its insured, the University of New Mexico, in the above referenced matter."  Id.  Nieto's counsel never responded to the July 20, 2007 letter.  See Response at 5.

On August 31, 2007, Nieto's attorneys filed Notices of Non-Availability.  Nothing else appears in the record until March 13, 2008, when the state district court entered its order dismissing the case without prejudice for failure to prosecute.  Nieto did not initiate any other action in this case before the late service of the summons and Complaint.

UNM and its hospital are arms of the state.  See N.M. Const. art. XII, § 3 (defining UNM as a state educational institution and stating that "[t]he . . . universities . . . provided for by this constitution shall forever remain under the exclusive control of the state"); N.M.S.A. § 21-7-1 (stating that UNM is intended to be the state university); Aly v. Mt. Holding, L.L.C., No. 98-2273, 2000 WL 18878, at *1 (10th Cir. Jan. 12, 2000)(stating that the UNM Hospital is "a state entity"); Buchwald v. Univ. of N.M. Sch. of Med., 159 F.3d 487, 494 n.3 (10th Cir. 1998).  Accordingly, because UNM Hospital is considered a public hospital operated as an arm of the state, on March 3,

---

129, 151 P.3d 88, 90 (Ct. App. 2006).  "[T]he applicable statute of limitations is not suspended during the pendency of an action dismissed for failure to prosecute."  Id.  Should the applicable statute of limitations have not already expired, the party is permitted to file a second action, which is not barred by any collateral estoppel or res judicata principles.  See id.  Because the statute of limitations appears to have expired on Nieto's claims during the course of the EEOC proceedings or during the pendency of his state court action, reinstating the action most likely remains his only remedy.  While that may be a relevant factor in a rule 41 analysis, under which the Court considers if lesser sanctions are appropriate, the Court finds no authority indicating such a factor is relevant in a rule 60(b)(6) analysis.

2008, the Complaint was served on the State of New Mexico's Attorney General and on the Governor.  See Buchwald v. Univ. of N.M. Sch. of Med., 159 F.3d at 494 n.3 ("[W]e have no doubt that [University of New Mexico School of Medicine], its Regents, and the Committee on Admissions are 'arms of the state,' entitled to Eleventh Amendment immunity."); Watson v. Univ. of Utah Med. Center, 75 F.3d 569, 576-77 (10th Cir. 1996); Motion at 1.  Nieto's attorney has previous experience in suing and serving process upon UNM.  Mr. Vigil filed a civil court action against UNM on September 24, 2005.  See Response at 6 (citing James Cain v. Univ. of N.M., D-202-CV-200406164).

Nieto's counsel alleges that he tried to serve UNM on two occasions -- March 3, 2008, and on April 10, 2008.  The first attempt was made on the same day that service was effectuated on the State of New Mexico, but the attempt to serve UNM was to no avail, as the process server incorrectly served the Complaint.  See Motion at 2; Affidavit of Gilbert Vigil ¶ 3, at 22 (executed April 10, 2008), filed May 12, 2008 (Doc. 1-1).  Nevertheless, the process server verified that the service of process was completed in the return of service.  See Reply at 22.  Nieto believed all parties had been properly served until he received a letter notifying him that the process server served the wrong party.  See Motion at 2; Letter from Anita Valdez to Gilbert Vigil (dated March 18, 2008), filed May 12, 2008 (Doc. 1-2).

On March 13, 2008, approximately ten days after service of process was attempted on all parties, and effectuated upon the State of New Mexico, the Honorable Linda Vanzi of the New Mexico Court of Appeals, then state District Court Judge, entered and filed an Order of Dismissal for Lack of Prosecution.  See Lack of Prosecution Dismissal Order, Nieto v. Univ. or N.M., CV-20703278 (N.M. D. Court. Mar. 13, 2008), filed May 12, 2008 (Doc. 1-2).  Nieto did not receive

actual notice of the improper service until the state court had already dismissed the matter for lack

of prosecution, at which time Nieto attempted to rectify service of process.  <u>See</u> Motion at 2; Letter

from Anita Valdez to Gilbert Vigil (dated March 18, 2008).

       On April 10, 2008, Nieto filed a summons return on the Attorney General and on Governor

Richardson, as well as an Affidavit regarding Summons and Service.  Also on April 10, 2008, Nieto

attempted again to effectuate service of process upon UNM by obtaining an Alias Summons and

attempting service of process.  <u>See</u> Motion ¶ 5, at 2.  The state court issued Alias Summons to UNM,

Department of Risk Management, <u>see</u> Alias Summons at 13 (dated April 10, 2008), filed May 12,

2008 (Doc. 1-2); Motion ¶ 5, at 2, although a Department of Risk Management at UNM does not

exist, <u>see</u> Response at 3.  The state court issued the Alias Summons after it had dismissed the case

without prejudice for lack of prosecution on March 13, 2008.  <u>See</u> Response at 21.

       On April 10, 2008, UNM Hospital would not accept service of the Complaint, even though

the process server attempted to effectuate service through the UNM Hospital Risk Management

Department and the UNM Hospital Legal Department.  That same day, Nieto served the Complaint

on the UNM Legal Department.  <u>See</u> Motion ¶ 5, at 2.

       The service of the Complaint on UNM on April 10, 2008, was not complete, however, as

Nieto served only the first four out of eleven pages of the Complaint.  <u>See</u> Affidavit of Michelle

Williams (executed May 1, 2008), filed May 12, 2008 (Doc. 1-3)("We were not provided with a

complete copy of the Complaint as required by N.M.RA. Rule 1-004(C)(1)."); NMRA, Rule 1-

004C(1)(stating that, if a summons is to be served, it shall be served together with any other pleading

or paper required to be served by this rule, and that the plaintiff shall furnish the person making

service with such copies as are necessary).

On April 14, 2008, Nieto filed a Motion for Reinstatement.  See Doc. 1-2.  Other than the filing of the Motion for Reinstatement, Nieto's counsel has made no attempt to contact UNM's counsel regarding service of the Complaint and Summons, or to discuss resolution of the case.  See Response at 4.  On April 16, 2008, the state district court filed a Notice of Hearing for a fifteen minute hearing at 1:30 p.m. on May 8, 2008.  Nieto's attorney was late for the May 8, 2008 hearing, and the state court had adjourned when he arrived.  See Transcript of Hearing at 6:4-9 (taken September 28, 2010)(Vigil).[2]  On May 9, 2008, Judge Vanzi denied Nieto's motion and decided to deny reinstatement of the case, because Nieto's counsel did not appear at the hearing on the motion.  See Order Denying Plaintiff's Motion for Reinstatement, Nieto v. Univ. or N.M., CV-20703278 (N.M. D. Court. May 9, 2008), filed May 12, 2008 (Doc. 1-3).  Judge Vanzi dismissed this matter and entered judgment on May 9, 2008.[3]

On May 12, 2008, within thirty days of receiving the Complaint in the state court action and to preserve the timeliness of removal, see 28 U.S.C. § 1446(b), UNM filed a Notice of Removal with the Court and removed this matter, see Doc. 1.  UNM also removed the case in the event Nieto brought a second case that could be consolidated with the first case, which might have precluded UNM from removing the second case.  See Blue Ox Corp. v. Murphy Oil Corp., 524 F. Supp. 1019,

---

[2] The Court's citations to the transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

[3] Under New Mexico procedure, a judgment "includes a decree and any order from which an appeal lies."  NMRA, Rule 1-054.  Nieto filed his Notice of Appeal based on the May 9, 2008, Order Denying Plaintiff's Motion for Reinstatement "and the underlying Disposition Order For Lack of Prosecution Disposing of Case, filed on March 13,2008."  Notice of Appeal (dated June 6, 2008), filed April 6, 2010 (Doc. 11-1).  The Court treats the underlying Disposition Order For Lack of Prosecution Disposing of Case as the judgment and the Order Denying Plaintiff's Motion for Reinstatement as an order on Nieto's motion to set aside the judgment.  Both, however, occurred over a year before Nieto filed his Federal Rule of Civil Procedure 60(b) motion in this case.

1021 (D. Mont. 1981).  Nieto filed a Notice of Appeal with the New Mexico Court of Appeals on June 6, 2008, appealing the denial of the reinstatement.  See Doc 11-1.

On November 12, 2008, the New Mexico Court of Appeals issued a Notice Proposed Summary Disposition.  See Doc. 11-1.[4]  The New Mexico Court of Appeals proposed finding the state district court did not abuse its discretion by dismissing the case, because Nieto offered no authority indicating that the filing of a notice of non-availability constitutes significant action in a case and no other action occurred in 180 days, and that service of process is not sufficient to make dismissal inappropriate.  See Notice Proposed Summary Disposition, Nieto v. Univ. or N.M., No. 28,730, at *2-3 (N.M. Ct. App. Nov. 12, 2008)(citing Escobar v. Montoya, 82 N.M. 640, 641, 485 P.2d 974, 975 (Ct. App. 1971)("[S]ervice of process is not the kind of action which would be sufficient to toll the running of the mandatory dismissal rule.")).  The New Mexico Court of Appeals also proposed finding that Nieto failed to show the delay was not wholly unjustified, or that he was ready, willing, and able to proceed with prosecution.  See Notice Proposed Summary Disposition at *4-5.

On December 15, 2008, Nieto filed a Memorandum in Opposition to Summary Disposition, see Doc. 11-1, disputing the Notice of Proposed Summary Disposition.  Nieto argued that service of process was substantial action, that the failure to serve the UNM was inadvertent, and that he was ready, willing, and able to proceed prosecuting the case.  On February 2, 2009, the New Mexico Court of Appeals filed a Second Notice Proposed Summary Disposition, Nieto v. Univ. or N.M., No. 28,730, at *2-3 (N.M. Ct. App. Feb. 2, 2009), proposing to dismiss for lack of jurisdiction because

---

[4] Under NMRA, Rule 12-210(D), the New Mexico Court of Appeals' proposed summary dispositions give parties twenty days to file a memorandum stating any reasons why the proposed disposition should or should not be made before the order becomes final.

UNM had filed its Notice of Removal.  Neither party filed a memorandum in opposition, and the New Mexico Court of Appeals entered a Memorandum Opinion and Order on May 27, 2009, finding the Notice of Removal divested the Court of Appeals of jurisdiction.  On July 8, 2009, the New Mexico Court of Appeals issued a Mandate to District Court Clerk finalizing its order, and on September 3, 2009, the state district court issued a Judgment by Mandate, dismissing the case for lack of subject-matter jurisdiction, because the Notice of Removal divested the state courts of jurisdiction to act on this case.  After reviewing the jurisdictional briefs that the parties submitted, the Court entered a Memorandum Opinion and Order on May 20, 2010, retaining federal jurisdiction over the matter.  See Doc. 19.

Nieto moves the Court to vacate or to set aside the judgment that Judge Vanzi entered on March 13, 2008.  Nieto also asks the Court to reconsider the state district court's decision to deny reinstatement, which was entered May 9, 2008.  Nieto requests that the Court retain jurisdiction over the matter on its docket, set the matter for an Initial Scheduling Order and Conference pursuant to the rules of civil procedure, and, pursuant to rule 60(b), vacate the judgment that the state district court issued.  On June 18, 2010, UNM filed the Defendant's Response to Plaintiff's Motion to Vacate or Set Aside Judgment.  UNM prays that the Court deny Nieto's Motion to Vacate or Set Aside Judgment.  Nieto filed his Reply to Plaintiff's Motion for Reconsideration or Motion to Vacate or Set Aside the Judgment on July 23, 2010.

At the September 28, 2010 hearing, the Court proposed analyzing Nieto's Motion under rule 60(b)(6) of the Federal Rules of Civil Procedure.  Both parties agreed that rule 60(b)(6) controls in this matter.  See Tr. at 5:3-5 (Court, Vigil); id. at 12:21-24 (Court, Keith).  Nieto also conceded that he was not faultless in the delaying bringing this Motion.  See Tr. at 6:1-2 (Vigil)("Here there was

some fault . . . .").

## A FEDERAL DISTRICT COURT TAKES A REMOVED CASE
## AS THE COURT FINDS IT

When a case is removed from state court, the federal court takes the case in its current

posture and treats previously entered orders as its own.  The Supreme Court of the United States in

Granny Goose Foods v. Brotherhood of Teamsters, Local No. 70, 415 U.S. 423 (1974), stated:

> Congress clearly intended to preserve the effectiveness of state court orders after
> removal . . . .  After removal, the federal court "takes the case up where the State
> court left it off."  Duncan v. Gegan, 101 U.S. 810, 812 . . . (1880).  The "full force
> and effect" provided state court orders after removal of the case to federal court was
> not intended to be more than the force and effect the orders would have had in state
> court.
>
> More importantly, once a case has been removed to federal court, it is settled that
> federal rather than state law governs the future course of proceedings,
> notwithstanding state court orders issued prior to removal.

415 U.S. at 436-37.  See 28 U.S.C. § 1450 (stating that all orders entered before removal "shall

remain in full force and effect until dissolved or modified by the district court"); Fed. R. Civ. P.

81(c)(1)(stating that the Federal Rules of Civil Procedure "apply to a civil action after it is removed

from a state court").  In Wallace v. Microsoft Corp., 596 F.3d 703, 707 (10th Cir. 2010), the United

States Court of Appeals for the Tenth Circuit stated:

> After the removal of an action from state court . . . the case will proceed as if it
> originally had been brought in the federal court[;] [t]hus, it has been settled by
> numerous cases that the removed case will be governed by the Federal Rules of Civil
> Procedure and all other provisions of federal law relating to procedural matters.

596 F.3d at 707 (citations and internal quotation marks omitted).  After removal, "[t]he district court

then c[an] set aside [a] default judgment under Fed.R.Civ.P. 55(c) and 60(b)."  Jenkins v. MTGLQ

Investors, 218 F. App'x 719, 724 (10th Cir. 2007)(affirming the federal district court's applying rule

60(b) to set aside the state court's dismissal of a case based on improper service of process).

-9-

After removal, a federal court treats the state court orders as its own.  The United States

Court of Appeals for the Fifth Circuit stated in <u>Azzopardi v. Ocean Drilling & Exploration Co.</u>, 742

F.2d 890 (5th Cir. 1984):

> Once a state court action is removed, it is governed by federal, rather than state, procedure. . . .  Federal Rule of Civil Procedure 55(c) allows relief from a default judgment in accordance with the terms of Rule 60(b), which states that a judgment may be set aside for ". . . mistake, inadvertence, surprise, or excusable neglect . . . ."

742 F.2d 890, 895.  <u>See</u> <u>In re Savers Fed. Sav. & Loan Ass'n</u>, 872 F.2d 963, 966 (11th Cir.

1989)("In the instant case, in which removal and notice of appeal were timely, we will take the case

as we find it on removal and treat everything that occurred in the state court as if it had taken place

in the district court below.").  As the United States Court of Appeals for the Ninth Circuit has

recognized, "a federal court must take a case as it finds it on removal, requiring a district court to

treat a prior state judgment 'as though it had been validly rendered in [a] federal proceeding.'"

<u>Resolution Trust Corp. v. BVS Dev., Inc.</u>, 42 F.3d 1206, 1212 (9th Cir. 1984)(quoting <u>Butner v.

Neustadter</u>, 324 F.2d 783, 786 (9th Cir. 1963)).  At least two federal circuits have implied that,

where there has been a final judgment entered in the state court before removal, the proper action

for the federal district court is to enter the state-court's judgment as its own.  <u>See</u> <u>Resolution Trust

Corp. v. BVS Dev., Inc.</u>, 42 F.3d at 1210; <u>FDIC v. Kahlil Zoom-In Markets</u>, 978 F.2d 183, 184 (5th

Cir. 1992).  <u>See also</u> <u>Stockton v. The Canada Life Assurance Co.</u>, No. 08-3016, 2008 WL 3925159,

at *4 (C.D. Ill. Aug. 20, 2008)("After the state court's jurisdiction ends, the federal court must treat

any judgment entered before the state court received notice [of removal] as if it [the federal court]

had entered the judgment").

## LAW REGARDING DISMISSAL OF CASE FOR FAILURE TO
## SERVE PARTIES AND TO PROSECUTE

While federal civil procedure governs the issues in this case, New Mexico law regarding dismissal of cases is instructive in understanding what Judge Vanzi was doing.  In the end, however, both state and federal courts have the power to dismiss an action for failure to prosecute.  Both the New Mexico courts and the Tenth Circuit review such dismissal orders for abuse of discretion.

**1.**      **New Mexico Law Regarding Dismissal of Cases.**

The New Mexico courts have an inherent authority to dismiss an action for lack of prosecution pursuant to rule 41E of the New Mexico Rules of Civil Procedure.  See N.M.R. Civ. P. 41E.  The district court rules state that, "unless a pretrial scheduling order has been entered pursuant to Rule 1-016 NMRA, a district court may dismiss without prejudice the action if the party filing the action has failed to take any significant action in connection with the action within the previous one hundred and eighty (180) days."  NMRA, Rule 1-041E(2).  An action that is dismissed without prejudice for failure to take significant action within 180 days cannot proceed except by leave of the court granted for good cause shown on a motion for reinstatement.  See NMRA, Rule 1-041E(2); Bankers Trust Co. of California, N.S. v. Baca, 141 N.M. 127, 128-29, 151 P.3d 88, 89-90 (Ct. App. 2006); Wershaw v. Dimas, 122 N.M. 592, 594, 929 P.2d 984, 986 (Ct. App. 1996).  See also Smith v. Walcott, 85 N.M. 351, 354-55, 512 P.2d 679, 682-83 (1973)(holding under prior procedure that sua sponte dismissal for failure of prosecution under the court's inherent dismissal power "is final and effectively terminates a case, unless and until it is properly reinstated" (citations omitted)).

State procedure allows courts the discretion to reopen a matter should a party move for reinstatement.  Rule 1-041E(2) provides that, "[w]ithin thirty (30) days after service of the order of dismissal, any party may move for reinstatement of the case.  Upon good cause shown, the court

-11-

shall reinstate the case and shall enter a pretrial order pursuant to Rule 1-016 NMRA." The standard for "good cause shown" is met when a party "can demonstrate to the court that he is ready, willing, and able to proceed with the prosecution of his claim," and "that the delay in the prosecution is not wholly without justification." Vigil v. Thriftway Mktg. Corp., 117 N.M. 176, 180, 870 P.2d 138, 142 (Ct. App. 1994)(internal quotation marks and citation omitted). Reinstating a case allows the court to reactivate the case at the same point in the proceedings where it was dismissed and to suspend the applicable statute of limitations. See Bankers Trust Co. of California, N.S. v. Baca, 141 N.M at 129, 151 P.3d at 89. If the applicable statute of limitations has not already expired, the party is permitted to file a second action, which is not barred by any collateral estoppel or res judicata principles, although if the statute of limitations has already expired, reinstating the action remains the party's only remedy. See Bankers Trust Co. of California, N.S. v. Baca, 141 N.M. at 129, 151 P.3d at 89.

A district court may dismiss a case for failure to prosecute, independent of any statute, and unless there has been an abuse of discretion, a trial court's dismissal will not be disturbed on appeal. See Henriquez v. Schall, 68 N.M. 86, 88, 358 P.2d 1001, 1002 (1961). Service of process is not an action sufficient to toll the running of the mandatory dismissal rule. Service upon a defendant is one step in the process of litigation and does not constitute the required diligence to bring a case to its final determination. See Escobar v. Montoya, 82 N.M. at 641, 485 P.2d at 975 (finding that dismissal of a personal injury case, under former § 21-1-1(41)(3)(1) 1953 Comp., for failure to prosecute, was proper where problems encountered in serving defendant were not a result of the defendant's absence from the state or her concealment within the state).

In New Mexico, a court reviews the dismissal of an action for failure to prosecute for an

abuse of discretion.  See Cottonwood Enters. v. McAlpin, 109 N.M. 78, 81, 781 P.2d 1156, 1159 (1989).  Similarly, a court reviews the denial of a motion to reinstate pursuant to rule 1-041E(2) for an abuse of discretion.  See Vigil v. Thriftway Mktg. Corp., 117 N.M. at 177, 870 P.2d at 139.

### 2. Federal Law Regarding Dismissal of Cases.

Rule 41(b) of the Federal Rules of Civil Procedure authorizes the district court to dismiss an action for the plaintiff's failure to prosecute to prevent undue delay or congestion of the courts. "If the plaintiff fails to prosecute or to comply with the[] rules or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).  The Tenth Circuit reviews a district court's grant of a defendant's rule 41(b) motion to dismiss for an abuse of discretion.  See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co., 497 F.3d 1135, 1143.  The federal courts examine a dismissal based upon a lack of prosecution by looking at and examining the totality of the circumstances and the record as a whole when confronted with a motion to dismiss for failure to prosecute.  The Tenth Circuit has identified a list of five non-exhaustive factors that the district court must take into account in considering whether to dismiss an action with prejudice, including:  (i) the degree of actual prejudice to the other party; (ii) the amount of interference with the judicial process; (iii) the litigant's culpability; (iv) whether the court warned the party in advance that dismissal would be a likely sanction for noncompliance; and (v) the efficacy of lesser sanctions. See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co., 497 F.3d 1135, 1143-44 (10th Cir. 2007). The dismissal sanction is also considered a measure of last resort, after balancing the strong interest of hearing a case on its merits against the aggravating circumstances that prompted the order to show cause.  See Jones v. Thompson, 996 F.2d 261, 265 (10th Cir. 1993); Ehrenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir. 1992)(stating dismissal is warranted when "the aggravating factors

outweigh the judicial system's strong predisposition to resolve cases on their merits"); <u>Meade v. Grubbs</u>, 841 F.2d 1512, 1521 & n.7 (10th Cir. 1988)("[D]ismissal is usually appropriate 'only where a lesser sanction would not serve the interest of justice.'" (citation omitted)).

In <u>Jones v. Thompson</u>, the Tenth Circuit used the five factors and decided to dismiss, pursuant to rule 41(b), a matter with prejudice for lack of prosecution and for failure to obey a court's order.  In this malpractice case, there existed four years of repeated failures to obey the court's orders, failures to appear for pretrial conferences, and refusals to attend depositions.  Under the five factors in <u>Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.</u>, the Tenth Circuit in <u>Jones v. Thompson</u> concluded it was left with no other alternative but to dismiss the case, especially in light of the fact that lesser sanctions had already been imposed with little repentance on the part of the plaintiff and without a demonstrable commitment from the plaintiff to diligently prosecute the claims. <u>See</u> 996 F.2d at 265-66.

### LAW REGARDING RULE 60(b)

While the state and federal law regarding dismissal for lack of prosecution is enlightening background, in the end, the Court is addressing a rule 60(b) motion.  Again, rule 60(b) of the Federal Rules of Civil Procedure governs.  the Tenth Court imposes a rigorous standard for rule 60(b)(6).

### 1.    State Rule 60(b).

Under New Mexico state procedure rule 60(b), a court has discretion to reopen a matter and relieve a party from a judgment.  <u>See Mora v. Hunick</u>, 100 N.M. 466, 468, 672 P.2d 295, 297 (Ct. App. 1983).  "[C]ourts are authorized by Rule 60(b) to relieve a party from any final judgment for good cause shown."  <u>Mora v. Hunick</u>, 100 N.M. at 468, 672 P.2d at 297.  In <u>Mora v. Hunick</u>, the plaintiff's complaint was dismissed sua sponte for lack of prosecution more than two years after it

was filed, was reinstated, was dismissed again sua sponte on the same ground more than one year

later, and was again reinstated, and the court still had jurisdiction to hear the case on its merits.  100

N.M. at 469, 672 P.2d at 298.

> 2.    **Federal Rule 60(b).**

Turning to federal law, rule 60(b) of the Federal Rules of Civil Procedure allows a court to

relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect,"

Fed. R. Civ. P. 60(b)(1), or "any other reason that justifies relief,"  Fed. R. Civ. P. 60(b)(6).  "Rule

60(b) is an extraordinary procedure permitting the court that entered judgment to grant relief

therefrom upon a showing of good cause within the rule."  Cessna Fin. Corp. v. Bielenberg Masonry

Contracting, Inc., 715 F.2d 1442, 1444 (10th Cir. 1983).  Rule 60(b) "is not a substitute for appeal,

and must be considered with the need for finality of judgment."  Cessna Fin. Corp. v. Bielenberg

Masonry Contracting, Inc., 715 F.2d at 1444 (citing Brown v. McCormick, 608 F.2d 410, 413 (10th

Cir. 1979)). The rule was designed to strike a "delicate balance" between respecting the finality of

judgment and, at the same time, recognizing the court's principal interest of executing justice.

Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444.

Motions to reconsider based on "mistake, inadvertence, surprise, or excusable neglect" must

be brought "within a reasonable time . . . no more than a year after the entry of the judgment or order

or the date of the proceeding."  Fed. R. Civ. P. 60(c)(1).  See Blanchard v. Cortes-Molina, 453 F.3d

40, 44 (1st Cir. 2006)("[R]elief from judgment for reasons of 'mistake, inadvertence, surprise, or

excusable neglect,' must be sought within one year of the judgment.").  The pendency of an appeal

does not toll the time requirement for pursuing a motion governed by rule 60(c)(1).  See Griffin v.

Reid, 259 F. App'x 121, 123 (10th Cir. 2007); Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084,

1088 (10th Cir. 2005)("[A]n appeal does not toll or extend the one-year time limit of Rule 60(b).").

The Tenth Circuit uses three factors in determining whether a judgment may be set aside in accordance with rule 60(b)(1): (i) whether the moving party's culpable conduct caused the default; (ii) whether the moving party has a meritorious defense; and (iii) whether the nonmoving party will be prejudiced by setting aside the judgment.  See United States v. Timers Preserve, 999 F.2d 452, 454 (10th Cir. 1993).

**3.  Rule 60(b)(6).**

Rule 60(b)(6) provides that a court may relieve a party from final judgment, order, or proceeding for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  No time limit applies to rule 60(b)(6), save that the motion be made within a reasonable time.  See Fed. R. Civ. P. 60(c)(1).  "Thus, to the extent it is applicable, clause (6) appears to offer a means of escape from the one-year limit that applies to motions under clauses (1), (2), and (3)."  11 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2864 (2d ed. 2010).

"Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief.'"  C. Wright, A. Miller & M. Kane, supra, § 2864.  In Pioneer Inv. Services Co. v. Brunswick Associates Ltd., 507 U.S. 380 (1993), the Supreme Court of the United States reasoned that, to avoid abrogating the one year time limit for rule 60(b)(1) to (3), rule 60(b)'s "provisions are mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)."  507 U.S. at 393 (citing Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 863 & n.11 (1988)).  The Supreme Court expounded:

> To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay.  If a party is partly

-16-

to blame for the delay, relief must be sought within one year under subsection (1)
and the party's neglect must be excusable. In <u>Klapprott</u>, for example, the petitioner
had been effectively prevented from taking a timely appeal of a judgment by
incarceration, ill health, and other factors beyond his reasonable control.  Four years
after a default judgment had been entered against him, he sought to reopen the matter
under Rule 60(b) and was permitted to do so.

<u>Pioneer Inv. Services Co. v. Brunswick Associates Ltd.</u>, 507 U.S. at 393 (citing <u>Liljeberg v. Health</u>

<u>Services Acquisition Corp.</u>, 486 U.S. at 863 & n.11; <u>Ackerman v. United States</u>, 340 U.S. 193,

197-200 (1950); <u>Klapprott v. United States</u>, 335 U.S. 601, 613-614 (1949)).  See <u>Gonzalez v.</u>

<u>Crosby</u>, 545 U.S. 524, 535 (2005)("[O]ur cases have required a movant seeking relief under Rule

60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment.").  In

<u>Gonzalez v. Crosby</u>, the Supreme Court found a change in the law during the pendency of a habeas

petition was not an extraordinary circumstance.  <u>See</u> 545 U.S. at 537.

When the Supreme Court first addressed rule 60(b)(6) a year after it was introduced to the

federal rules, while the Court was sharply divided on other issues, no dispute arose from Justice

Black's statement: "[O]f course, the one year limitation would control if no more than 'neglect' was

disclosed by the petition.  In that event the petitioner could not avail himself of the broad 'any other

reason' clause of 60(b)."  <u>Klapprott v. United States</u>, 335 U.S. at 613.  <u>See</u> Wright et al., <u>supra</u>,

§ 2864.

Examples where courts apply rule 60(b)(6) include "settlement agreements when one party

fails to comply" and courts use the rule "to return the parties to the status quo," or in cases where

fraud is used by a "party's own counsel, by a codefendant, or by a third-party witness," which does

not fit within rule 60(b)(3)'s provision for fraud by an adverse party.  C. Wright, A. Miller & M.

Kane, <u>supra</u>, § 2864.  The most common application is to grant relief "when the losing party fails

-17-

to receive notice of the entry of judgment in time to file an appeal." <u>Id.</u>[5]  It is not enough to argue the same issues that a court has already addressed.  <u>See</u> <u>Pyeatt v. Does</u>, 19 F. App'x 785, 788 (10th Cir. 2001)("[A] motion to reconsider [that] simply reasserts information considered by the district court in its initial determination . . . does not meet the extraordinary circumstances standard required for Rule 60(b)(6) relief.")

## ANALYSIS

Nieto argues that the Court should vacate the state district court's judgment and reinstate the case.  He argues that the Court has discretion to afford him relief under rule 41E of the New Mexico Rules of Civil Procedure and under rule 41(b) of the Federal Rules of Civil Procedure.  Nieto asserts that the sanction of dismissal is a sanction of last resort, and that dismissal of his case was not warranted by the totality of the circumstances because UNM knew of the case and was not prejudiced by the failed service, the failure to serve the summons was inadvertent, and a lesser sanction would suffice to rectify the delay.  Nieto also argues federal rules 60(b)(1) and 60(b)(6) authorize the Court to afford Nieto the relief he seeks, because it allows a court to relieve a party from a final judgment for mistake, inadvertence, surprise, or excusable neglect, or for any other reason that justifies relief.  Nieto argues that his process server inadvertently served the wrong party, and, upon notice of this mistake, the Nieto hired another process server to obtain an alias summons

---

[5] "Most of those cases, however, predate the 1991 amendment to Appellate Rule 4(a)(6), which now provides relief from the strict appellate filing rule if the party did not learn of the entry of the judgment.  In light of that change, most courts have held that resort to Rule 60(b) as a means of extending the appeal time no longer is appropriate, although the Rule 60(b) approach is still utilized in some courts, primarily in the Sixth Circuit."  C. Wright, A. Miller & M. Kane, <u>supra</u>, § 2864 (citations omitted).  <u>See</u> <u>Clark v. Lavallie</u>, 204 F.3d 1038, 1041 (10th Cir. 2000)("Rules 4(a)(6) and 77(d) 'precludes the use of Fed.R.Civ.P. 60(b)(6) to cure problems of lack of notice.'" (citations omitted)).

and effectuate service in an attempt to correct the service of process issue.  Accordingly, Nieto

argues the United States v. Timers Preserve factors favor reinstatement under rule 60(b).  See 999

F.2d at 454 ("Courts have established three requirements . . . [for] setting aside a default judgment

under Rule 60(b): (1) the moving party's culpable conduct did not cause the default; (2) the moving

party has a meritorious defense; and (3) the non-moving party will not be prejudiced by setting aside

the judgment." (citations omitted)).

UNM responds that Nieto has not communicated with it since its counsel notified him they

had been retained, and Nieto has never properly effected service upon UNM, because it received

only part of the Complaint and the Alias Summons was invalid because it was issued after the state

district court dismissed the case.  UNM notes that Nieto's counsel has served them in previous

matters, so any contention that he did not know where to serve UNM must fail.  UNM further argues

that Nieto cannot account for delaying for almost a year to begin service and that failed service does

not amount to substantial action sufficient to toll the running of the mandatory dismissal rule.

UNM also argues that, under state procedure, Nieto cannot show the state district court

improperly dismissed the case for Nieto's failure to appear at the hearing.  UNM further argues that

Nieto cannot show the delay in prosecuting the case was not wholly without justification or that he

was ready, willing, and able to proceed with prosecuting the case.  Consequently, UNM argues the

Court should deny Nieto's motion.

The Court finds that rule 60(b)(6) governs Nieto's Motion, because the Court treats the state

district court's order as its own, and more than one year has passed since the decision was entered.

Under 60(b)(6), Nieto must show that he was faultless under extraordinary circumstances for

delaying his Motion.  The Court denies Nieto's Motion because he has not met his heavy burden

under rule 60(b)(6).

## I.   FEDERAL RULE 60(b) GOVERNS THE COURT'S ANALYSIS OF NIETO'S MOTION.

The Court steps into the shoes of the state court and treats the state court's orders as its own. Once UNM removed this case from state court, and the Court found it had jurisdiction over the case, the Court takes the case in its current posture and treats previously entered orders as its own.  See Granny Goose Foods v. Brotherhood of Teamsters, Local No. 70, 415 U.S. at 436-37 ("After removal, the federal court 'takes the case up where the State court left it off.'" (citing Duncan v. Gegan, 101 U.S. at 812)).  See 28 U.S.C. § 1450 (all orders entered before removal "shall remain in full force and effect until dissolved or modified by the district court").  Federal procedure applies "to a civil action after it is removed from a state court."  Fed. R. Civ. P. 81(c)(1).  As the Tenth Circuit said in Wallace v. Microsoft Corp.:

> After the removal of an action from state court . . . the case will proceed as if it originally had been brought in the federal court[;] [t]hus, it has been settled by numerous cases that the removed case will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters.

596 F.3d at 707 (citations and internal quotation marks omitted).  After removal, "[t]he district court then c[an] set aside the [state court's] . . . judgment under . . . 60(b)."  Jenkins v. MTGLQ Investors, 218 F. App'x at 724 (affirming the federal district court's applying rule 60(b) to set aside the state court's dismissal of a case based on based on improper service of process).

Because the Court steps into the shoes of the state court, but applies federal procedure, in determining whether to reopen the case, it follows the Court must determine if it would be permitted to reopen its own judgment under the federal rules.  Rule 60(b) controls whether the Court "may relieve a party or its legal representative from a final judgment, order, or proceeding."  Fed. R. Civ.

-20-

P. 60(b).  The Court, therefore, analyzes Nieto's Motion under federal rule 60(b).  See Jenkins v.

MTGLQ Investors, 218 F. App'x at 724.

## II.   THE COURT DENIES NIETO'S MOTION BECAUSE HE HAS NOT SHOWN EXTRAORDINARY CIRCUMSTANCES SUGGESTING THAT HE IS FAULTLESS IN THE DELAY.

The Court concludes that, under controlling law, it should deny Nieto's Motion, because he

has not shown extraordinary circumstances suggesting that he is faultless in delaying more than a

year to seek relief from the state court's judicial order.  Nieto argues that the Tenth Circuit's factors

for setting aside a judgment under rule 60(b)(1) favor reinstating his case.  The Tenth Circuit uses

three factors in determining whether a judgment may be set aside in accordance with rule 60(b)(1):

(i) whether the moving party's culpable conduct caused the default; (ii) whether the moving party

has a meritorious defense; and (iii) whether the nonmoving party will be prejudiced by setting aside

the judgment.  See United States v. Timers Preserve, 999 F.2d at 454.  Nieto argues these factors

supporting reopening the case:

> Here, the culpability did not rest at the hands of Plaintiff or his counsel, as both complied with the Court's rules, and believed that service had been properly effectuated on all parties.  It was not until undersigned counsel received a letter from the NM Department of Transportations [sic] was it discovered that service was not effectuated upon the proper party.  Moreover, the Plaintiff initiated action prior to the case being dismissed and has made several good faith attempts to prosecute the case.

Motion at 7.

The United States v. Timers Preserve factors apply to rule 60(b)(1), which allows a party to

seek relief from an order because of "mistake, inadvertence, surprise, or excusable neglect."  Fed.

R. Civ. P. 60(b)(1).  A motion under rule 60(b)(1), however, must be brought in "no more than a

year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. (c)(1).

The orders Nieto seeks to vacate were entered on March 13, 2008, and May 9, 2008.  He did not file his motion until June 1, 2010, almost two years after the entry of the state court judgment.  Nieto pursued an appeal in state court, but pendency of an appeal does not toll the time requirement for pursuing a motion governed by rule 60(c)(1).  See Griffin v. Reid, 259 F. App'x 121, 123 (10th Cir. 2007); Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1088 (10th Cir. 2005)("[A]n appeal does not toll or extend the one-year time limit of Rule 60(b).").

Because more than one year has passed since the entry of the state court order, Nieto can succeed on his Motion only under rule 60(b)(6)'s demanding standard.  Rule 60(b)(6) provides that a court may relieve a party from final judgment, order, or proceeding for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  No time limit applies to rule 60(b)(6), save that the motion must be made within a reasonable time.  See Fed. R. Civ. P. 60(c)(1).

Despite the rule's inviting language, under rule 60(b)(6) "a party must show extraordinary circumstances suggesting that the party is faultless in the delay."  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 393 (1993).  See Omar-Muhammad v. Williams, 484 F.3d 1262, 1264 (10th Cir. 2007)("[T]o obtain relief under Rule 60(b)(6), [petitioner] must show . . . 'extraordinary circumstances.'"); Cashner v. Freedom Stores, 98 F.3d 572, 579 (10th Cir. 1996) ("[A] district court may grant a Rule 60(b)(6) motion only in extraordinary circumstances and only when necessary to accomplish justice.").[6]  "Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief.'"  C. Wright, A. Miller & M. Kane, supra, § 2864.  See Cothrum v. Hargett, 178 F. App'x 855, 858 (10th Cir. 2006)(finding a prisoner's mental illness,

_____

[6] The parties agree that rule 60(b)(6) controls in this matter.  See Tr. at 5:3-5 (Court, Vigil); id. at 12:21-24 (Court, Keith).

which did not result in confinement to a mental institution or inpatient care, did not meet "heavy burden to justify relief under Rule 60(b)(6)"). "[A] party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)." In <u>Pioneer Inv. Services Co. v. Brunswick Associates Ltd.</u>, 507 U.S. at 393 (citing <u>Liljeberg v. Health Services Acquisition Corp.</u>, 486 U.S. 847, 863 & n.11 (1988)).

Nieto provides no reasons for delaying bringing his motion that would satisfy his burden under rule 60(b)(6). Nieto has not shown "'extraordinary circumstances' suggesting that the party is faultless in the delay." 507 U.S. at 393. Nieto concedes that he was not faultless in the delaying bringing this Motion. <u>See</u> Tr. at 6:1-2 (Vigil)("Here there was some fault . . . .").[7] Nieto points to nothing like the "incarceration, ill health, and other factors beyond his reasonable control" that would justify delaying bringing his Motion. <u>Pioneer Inv. Services Co. v. Brunswick Associates Ltd.</u>, 507 U.S. at 393. Nieto knew of both state court orders. He sought reconsideration of the first order, but missed the hearing, and the state court ruled against him. He never sought reconsideration of the second order before bringing this Motion to Vacate or Set Aside Judgment, and points to no circumstances preventing him from doing so. "If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable." 507 U.S. at 393. Nieto reveals no reason beyond neglect for his delay. The Court finds, therefore, Nieto

---

[7] Nieto also concedes that he was not faultless in the delay that led to the state court dismissal. <u>See</u> Memorandum in Opposition to Summary Disposition at 31 ("[Nieto] may have contributed to the delay, [but] Appellant made a good faith effort to correct the mistake . . . ."). Additionally, Nieto's attorney was late arriving for the hearing on reopening the case, and the state court adjourned before he arrived. <u>See</u> Order Denying Plaintiff's Motion for Reinstatement; Tr. at 6:4-9 (Vigil). Under rule 60(b)(6), however, the Court is concerned with Nieto's delay in filing his Motion. <u>See</u> C. Wright, A. Miller & M. Kane, <u>supra</u>, § 2864.

"c[an] not avail himself of the broad 'any other reason' clause of 60(b)."  Klapprott v. United States,
335 U.S. 601, 613 (1949).

### III.    NIETO HAS NOT SHOWN GOOD CAUSE FOR HIS LACK OF ACTION.

Nieto argues that, because the United States District Court retained jurisdiction on May 20,

2010, through its Memorandum Opinion and Order, the issue whether to reconsider the state district

court should be examined through the lens of the state court's original intent.  The Court does not

agree with the proposed analysis; because the state court entered judgment, and the Court must now

treat that judgment as its own, this Court must use rule 60(b)(6) to decide whether to set aside that

judgment before reopening the case.  Even under Nieto's proposed argument, however, Nieto has

not shown good cause to reinstate his case.  Vigil v. Thriftway Mktg. Corp., 117 N.M. at 180, 870

P.2d at 142 (stating good cause requires that a party "can demonstrate to the court that he is ready,

willing, and able to proceed with the prosecution of his claim and that the delay in the prosecution

is not wholly without justification").  Nieto has offered no reason why he delayed almost a year --

from April 13, 2007, through May 3, 2008 -- to begin service of the Complaint.  The Court need not,

and does not, decide whether Judge Vanzi abused her discretion in denying the motion for

reinstatement.  For present purposes, it is sufficient for this Court to conclude that Nieto has offered

no reason why he waited nearly eleven months before the attempt at service or why he pursed no

other action in the case.  Nieto has provided no excuse for this delay.

UNM maintains that, even if the state district court had been aware that Nieto had attempted

to serve UNM on March 3, 2008, this fact alone would have been insufficient to show that dismissal

for failure to prosecute was inappropriate.  See Escobar v. Montoya, 82 N.M. at 641, 485 P.2d at 975

(stating that dismissal of a personal injury case, under former § 21-1-1(41)(3)(1) 1953 Comp., for

failure to prosecute, was proper where problems encountered in serving defendant were not a result of the defendant's absence from the state or her concealment within the state).

The basis for denial of the motion to reinstate was Nieto's failure to appear at the hearing. Nieto does not argue, nor could he do so successfully, that Judge Vanzi's denial of his motion to reinstate because his counsel did not appear at the hearing on the motion was an improper reason to deny the motion. See Mayeux v. Winder, 139 N.M. 235, 131 P.3d 85 (Ct. App. 2005)(noting that the appellant bears the burden of clearly demonstrating how the district court erred). UNM contends, however, that denial of the motion on its merits would also not have been an abuse of discretion. UNM maintains that Nieto's motion to reinstate, which was denied, did not assert or otherwise demonstrate that he was ready, willing, and able to proceed with the prosecution of his claim, or that the delay in prosecution was wholly without justification.

Nieto does not show good cause for his delay. Under New Mexico procedure, "service of process is not 'required diligence' to bring the case to its final determination, and does not toll the running of the rule." Escobar v. Montoya, 82 N.M. at 641, 485 P.2d at 975 (finding that dismissal of a personal injury case, under former § 21-1-1(41)(3)(1) 1953 Comp., for failure to prosecute, was proper where problems encountered in serving defendant were not a result of the defendant's absence from the state or her concealment within the state). Consequently, failed service of process is not substantial action sufficient to toll the running of the mandatory dismissal rule. Beyond the failed service of process, Nieto made no other action in the case before the state district court dismissed it for lack of prosecution. Nieto, therefore, fails to show that his delay had some justification, and, thereby, cannot show good cause for this delay.

**IT IS ORDERED** that the Plaintiff's Motion to Vacate or Set Aside Judgment, filed June

1, 2010 (Doc. 20) is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Christina A. Vigil
Law Office of Christina A. Vigil
Albuquerque, New Mexico

*-- and --*

Gilbert J. Vigil
Gilbert J. Vigil Law Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

John S. Stiff
Ann Louise Keith
Stiff, Keith & Garcia, LLC
Albuquerque, New Mexico

   *Attorneys for the Defendant*